UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOPETON K. FRANCIS,

Plaintiff,

-v-

CITY OF NEW YORK, et al.,

Defendants.

24-CV-2530 (MMG) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE MARGARET M. GARNETT, UNITED STATES DISTRICT JUDGE:**

Plaintiff Hopeton K. Francis, a pretrial detainee who does not have a lawyer and therefore is suing pro se, asserts claims against Defendants City of New York (the "City"), Jerome Salmon, Colette Raspanti, Captain Davis, and Officer Garcia under 42 U.S.C. § 1983 for alleged deliberate indifference to Plaintiff's medical needs arising out of two incidents in March 2024. (*See generally* ECF 15, Am. Compl. ("AC").) Pending before the Court is Defendants' motion to dismiss the AC pursuant to Fed. R. Civ. P. 12(b)(6) on several grounds, including that Plaintiff failed to exhaust the administrative remedies available to him and that the AC fails to state a claim upon which relief may be granted. (*See* ECF 19, Defs.' Mot. To Dismiss; ECF 20 Defs.' Mem.) Having carefully reviewed the parties' submissions, for the reasons set forth below, I respectfully recommend that Defendants' motion to dismiss should be GRANTED but that Plaintiff should be granted leave to replead.

**FACTUAL BACKGROUND**

For purposes of the pending motion to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *See City of Providence*

*v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017). When a plaintiff has no lawyer, the court, when evaluating the plaintiff's allegations, may consider facts raised for the first time in a brief in opposition to a motion to dismiss. *See Murphy v. Rodriguez*, No. 23-CV-6998 (KMK), 2024 WL 4290723, at *1 (S.D.N.Y. Sept. 25, 2024); *Simmons v. Putnam/N. Westchester Bd. of Coop. Educ. Servs.*, No. 19-CV-10388 (VB), 2020 WL 5505366, at *1 n.3 (S.D.N.Y. Sept. 9, 2020); *Gadson v. Goord*, No. 96-CV-7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

A court may not, however, consider completely new claims raised for the first time in a pro se plaintiff's opposition to a motion to dismiss. *See Mira v. Argus Media*, No. 15-CV-9990 (RJS), 2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017) ("Although district courts sometimes consider new factual allegations made in a pro se plaintiff's opposition briefs where they are consistent with those in the complaint, they do not consider entirely new claims."); *Williams v. Rosenblatt Sec. Inc.*, No. 14-CV-4390 (JGK), 2016 WL 4120654, at *5 (S.D.N.Y. July 22, 2016) ("Opposition to a motion to dismiss is not a proper means to assert new claims.").

The factual background that follows is based on the allegations in the AC and attached exhibits as well as in Plaintiff's filings in opposition to the motion to dismiss. (*See generally* ECF 15, AC; ECF 41, Pl.'s Opp.; ECF 57, Pl.'s Surreply.)[1] For the sake of completeness, I include Plaintiff's allegations in his opposition to the motion to dismiss concerning a third incident, involving Plaintiff's receipt of prescribed medications, which occurred after the two incidents in March 2024, even though I do not consider these allegations as part of the AC, since they raise new

---

[1]    Plaintiff filed two nearly identical briefs in opposition to the motion to dismiss, ECFs 40 and 41; in this report and recommendation, I cite only to ECF 41.

claims for the first time in opposition papers to Defendants' motion to dismiss. *See Mira*, 2017 WL 1184302, at *3 n.4.

On March 1, 2024, Plaintiff notified Officer Garcia that he was not feeling well, to which she responded, "lay down and maybe you'll feel better." (ECF 41, Pl.'s Opp. at 1-2.) Plaintiff also spoke to Captain Davis about his symptoms, who told him to "get some rest and maybe [he]'ll feel better." (*Id.* at 2.) Plaintiff's symptoms worsened and Escort Officer Carabello walked Plaintiff to the medical unit even though Carabello said he did not think it was a good idea for Plaintiff to walk; Plaintiff was then sent to Bellevue Hospital for further treatment for what turned out to be a heart attack. (*See id.* at 2; ECF 15, AC at 5.)

Plaintiff's discharge papers were misplaced by the prison escort officer, leading to a lack of adequate aftercare, which caused Plaintiff to have a heavy nosebleed on March 12, 2024. (*See* ECF 15, AC at 5.) Due to a shortage of medical personnel, Officer Carabello walked Plaintiff to the medical area rather than using another form of transport, and Plaintiff suffered a fall, injuring his right leg, which became infected. (*See id.* at 5-6.) Plaintiff received permission to walk with a cane from March 12, 2024 to September 12, 2024. (*See id.* at 8.) At the time Plaintiff filed the AC in June 2024, Plaintiff was still receiving treatment for his injuries from the fall. (*See id.* at 6.)

Plaintiff contends there were continued gaps in his medical care after he filed the AC. (*See* ECF 41, Pl.'s Reply at 4.) Specifically, on October 3, 2024, Plaintiff was housed in a general population unit and did not receive his medications until October 13, 2024 and did not have his blood drawn until October 15, 2024. (*See id.*)[2]

---

[2]    Plaintiff states that these events took place in October 2025, which is a typographical error since his filings took place before October 2025.

## PROCEDURAL HISTORY

Plaintiff filed this case on April 2, 2024. (*See* ECF 1, Compl.) He filed the AC on June 24,

2024, bringing claims under 42 U.S.C. § 1983 for violation of his federal constitutional rights. (*See*

ECF 15, AC.) Defendants City, Salmon, and Raspanti (together, "Served Defendants") filed a motion

to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim

(ECF 19), arguing that Plaintiff had failed to exhaust his administrative remedies, had failed to state

a claim against the individual Defendants, had failed to state a deliberate indifference claim, and

had failed to allege a City policy or practice, as is necessary for municipal liability under section

1983. (*See* ECF 20, Defs.' Mem. at 4-16.) Defendants Garcia and Davis have not yet been identified

or served. This matter was referred to me on December 9, 2024, for general pretrial supervision.

(*See* ECF 28, Order of Ref.)

On March 25, 2025, the Office of the Clerk of Court docketed both Plaintiff's opposition to

Defendant's motion to dismiss and a motion by Plaintiff to amend the operative complaint. (*See*

ECF 39, Pl.'s Mot.; ECF 41, Pl.'s Opp.) On March 26, 2025, the Office of the Clerk of Court docketed

a second opposition by Plaintiff to Defendants' motion to dismiss; that opposition was

substantively identical to the first opposition to the motion to dismiss and argued that the conduct

of the staff at Riker's Island showed "depraved indifference or negligence" towards Plaintiff's

injuries. (EFC 41, Pl.'s Opp. at 4.) I held a status conference on April 2, 2025, to ask Plaintiff

whether he wished to oppose the motion to dismiss or to move to amend the operative

complaint. Plaintiff stated that he wished to oppose the motion to dismiss. I therefore issued an

order withdrawing Plaintiff's motion to amend on April 2, 2025. (*See* ECF 43, Order.) Served

Defendants filed a reply in further support of Plaintiff's opposition to their motion to dismiss on April 21, 2025. (*See* ECF 45, Defs.' Reply.)

Plaintiff wrote a letter on June 3, 2025, requesting a Court-appointed attorney. (*See* ECF 50, Pl.'s Letter.) I held a status conference on June 11, 2025, to explain that there is no right to a court-appointed attorney in a civil case and to inform Plaintiff of the City Bar Justice Center Legal Services Clinic. (*See* ECF 52, Order.) I also granted Served Defendants' motion to stay discovery (*see id.*), which was unopposed by Plaintiff; and I gave Plaintiff leave to file a surreply to correct what he believed to be errors in Defendants' filings in support of the motion to dismiss and Defendants leave to file a sur-surreply. (*See id*.)

On June 25, 2025, Plaintiff wrote a letter "to convince [the Court] that this situation at hand is either illegal or wrong or has a degree of negligence," stating that his medical files "clearly show that officials had enough information within [his] medical history (along with all [the] medications being administered)[ ] that there were risks at hand." (ECF 53, Pl.'s Letter.)

On July 17, 2025, I held a status conference, during which Plaintiff stated that he still wished to file a surreply; I gave him until August 1, 2025 to do so and gave Defendants until August 21, 2025 to file their sur-surreply. (*See* ECF 56, Order.) Plaintiff filed his surreply, asserting that Defendants had misstated the location where Plaintiff's injuries had occurred and questioning whether any ruling on Defendants' motion could be accurate as a result. (*See* ECF 57, Pl.'s Surreply.) Defendants filed their sur-surreply, arguing that while Defendants had misidentified the location where Plaintiff had been injured, the error was a harmless one that would have no bearing on their motion to dismiss. (*See* ECF 58, Defs.' Sur-Surreply.)

On September 9, 2025, I held a conference to discuss whether Defendants intended to accept service for and represent Defendants Garcia and Davis. Defendants stated that they had

not yet identified Officer Garcia or Captain Davis, who therefore have not yet been served and are not yet represented by City. Defendants' counsel took the position that the Court could dismiss claims against Officer Garcia and Captain Davis even though they have not yet appeared. At the conclusion of the conference, I instructed Defendants' counsel to update the Court of their efforts to identify Defendants Garcia and Davis by September 25, 2025. (*See* ECF 60, Order.) On September 25, 2025, Defendants' counsel informed the Court that they had successfully identified Officer Garcia and anticipated that they would be able to identify Captain Davis within the next week. (*See* ECF 61, Defs.' Letter at 1.)

### LEGAL STANDARDS FOR MOTIONS TO DISMISS

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[C]ourts must accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 77 (E.D.N.Y. 2019), *aff'd on other grounds*, 57 F.4th 66 (2d Cir. 2023) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).

---

[3]     Unless indicated otherwise, this report and recommendation omits internal quotation marks, citations, and alterations from quoted text.

A court should grant a motion to dismiss under Rule 12(b)(6) "where an affirmative defense or other reason barring relief is apparent from the face of the complaint." *Price v. City of N.Y.*, No. 11-CV-6170 (TPG), 2012 WL 3798227, at *2 (S.D.N.Y. Aug. 30, 2012).

When a plaintiff does not have a lawyer, the court must construe the plaintiff's submissions liberally and interpret all the plaintiff's filings to raise the strongest claims they may suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

A court may dismiss claims against non-appearing defendants on the same grounds applicable to defendants that appeared, so long as the plaintiff is given notice and an opportunity to be heard; the notice may be provided through a magistrate judge's report and recommendation, since the plaintiff may be heard in an objection to the report and recommendation. *See Milton v. Ocwen Mortg. Servicing, Inc*., No. 16-CV-3837 (MKB) (JO), 2017 WL 2992489, at *4 (E.D.N.Y. July 14, 2017); *see also Vondette v. McDonald*, No. 00-CV-6874, 2001 WL 1551152, at *1 n. 2 (S.D.N.Y. Dec. 5, 2001) ("Although defendant Park has not joined in the other defendants' motions, this Court will nonetheless enter judgment dismissing the action as to all defendants, on its own motion."); *Raitport v. Chem. Bank*, 74 F.R.D. 128, 134 (S.D.N.Y. 1977) ("No conceivable purpose can be served by awaiting the receipt of motion papers from the less diligent counsel."); *Walters v. Indus. & Com. Bank of China, Ltd*., 651 F.3d 280, 293 (2d Cir. 2011) (noting that "[b]oth the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule").

**DISCUSSION**

I.    **Defendants' Non-Exhaustion Defense**

A.    Legal Standards

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A pretrial detainee at the time of suit meets the definition of prisoner under the PLRA. *See id.* § 1997e(h).

This Court has held that a claim for "deliberate indifference to medical needs is a grievable issue under the City's grievance program." *Harris v. Bowden*, No. 03-CV-1617 (LAP), 2006 WL 738110, at *3 (S.D.N.Y. Mar. 23, 2006), *aff'd,* 349 F. App'x 601 (2d Cir. 2009); *see, e.g., Leneau v. City of New York*, No. 16-CV-0893 (RA), 2018 WL 583120, at *2-6 (S.D.N.Y. Jan. 26, 2018) (holding that the New York City Inmate Grievance and Request Program ("IGRP") applied to an inmate pleading a section 1983 claim for deliberate indifference to medical needs); *Richardson v. City of New York*, No. 11-CV-5733 (TPG), 2012 WL 4718623, at *2-3 (S.D.N.Y. Sept. 27, 2012) (dismissing a section 1983 claim for "inadequate medical care" where an incarcerated plaintiff had failed to exhaust administrative remedies).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and "a plaintiff need not plead administrative exhaustion in his complaint." *Hickman v. City of New York*, No. 20-CV-4699 (RA) (OTW), 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021). The Court may only dismiss a complaint at the pleading stage for failure to exhaust where "a plaintiff's non-exhaustion is clear from the face of the complaint." *Daniels v. Carter*, No. 21-CV-8985 (AT) (SLC),

2022 WL 17979915, at *5 (S.D.N.Y. Nov. 22, 2022); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 487 (S.D.N.Y. 2013) ("The only circumstance in which it is appropriate to dismiss a complaint on nonexhaustion grounds is when it is apparent from the face of the complaint that the plaintiff failed to exhaust his administrative remedies.").

"Under the PLRA, a prisoner need exhaust only available administrative remedies." *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 401 (E.D.N.Y. 2023) (quoting *Ross v. Blake*, 578 U.S. 632, 638 (2016)). The Supreme Court has recognized three circumstances in which administrative remedies, while nominally available, are insufficient recourse: (1) where "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where it is "so opaque that it becomes, practically speaking, incapable of use," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44 (2016).[4] This Court has excused the plaintiff from the PLRA exhaustion requirement because the plaintiff pleaded that the grievance coordinator had said the plaintiff had no rights and that a decision on the grievance was not necessary, *see Griffin v. City of New York*, No. 22-CV-851 (AS), 2025 WL 2198715, at *4 (S.D.N.Y. Aug. 1, 2025), and when the plaintiff was threatened with physical violence if he filed a grievance, *see Wing v. Myers*, No. 18-CV-11056 (KMK), 2019 WL 6732967, at *6 (S.D.N.Y. Dec. 11, 2019).

---

[4]    The Second Circuit has stated in dicta that these three circumstances may not be exhaustive but that the plaintiff would need to plead some circumstances that similarly show that the grievance process was unavailable. *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016) (explaining that "the three circumstances discussed in *Ross* do not appear to be exhaustive," but declining to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use" because the *Ross* factors were present).

"[F]utility is not established by an inmate's subjective belief that his administrative complaint might be denied." *Smith v. U.S. Dep't of Just.*, No. 18-CV-3371 (PMH), 2021 WL 2480412, at *6 (S.D.N.Y. June 17, 2021).

B.    Analysis

Defendants argue that Plaintiff had to exhaust his remedies through the New York City Department of Correction IGRP (*see* ECF 20, Defs.' Mem. at 4-8),[5] but they contend that there was insufficient time for Plaintiff to have completed the grievance process, because the date Plaintiff filed his complaint, on March 29, 2024, at the latest, was only 3 to 4 weeks after the two incidents in March 2024. (*See* ECF 20, Defs.' Mem. at 7-8.)[6] Plaintiff does not address this argument. (*See generally* ECF 57, Pl.'s Letter; ECF 41, Pl.'s Opp.) Defendants go on to contend that because Plaintiff did not respond to their PLRA exhaustion argument, Plaintiff has abandoned any claims based on issues that should have been grieved. (*See* ECF 45, Defs.' Reply at 1.)

The availability of an administrative remedy to a prisoner is a question of law and "[t]he court cannot properly determine a question of law on the basis of a party's concession (much less by the concession of an unrepresented party)." *Snider v. Melindez*, 199 F.3d 108, 113-114 (2d Cir.

---

[5]    Defendants request that the Court take judicial notice of the DOC's grievance procedure pursuant to Fed. R. Evid. 201(b) & (d). Courts regularly take judicial notice of the applicable IGRP procedures. *See Hickman*, 2021 WL 3604786, at *3) (collecting cases). The IGRP procedure is available at https://www.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf.

[6]    In prisoner litigation cases, under the "prisoner mailbox rule," a case is considered to be filed on the date the litigant provides the complaint to prison staff for mailing to the court. *See Reid v. City of New York*, No. 20-CV-9243 (KPF), 2024 WL 749620, at *2 n.4 (S.D.N.Y. Feb. 23, 2024). Courts generally presume that date to be the date the complaint was signed. *See id.* Here, however, the AC contained attachments post-dating the date the complaint was signed. (*See* ECF 20, Defs.' Mem. at 16-17.) Defendants take the position that the AC was given to prison staff for mailing between March 25 and March 29, 2024. (*See id.*) Drawing all inferences in Plaintiff's favor, as is required at the motion to dismiss stage, *see Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013), I assume the AC was filed on March 29, 2024.

1999) (holding that a prisoner answering "yes" on a standard-form pro se complaint to the question of whether administrative remedies were available to him was inadequate to determine the plaintiff had failed to exhaust administrative remedies). Plaintiff's failure to address the exhaustion argument does not mean that he has waived an argument that he did exhaust or that it would have been futile for him to do so. *See Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) ("[N]otions of simple fairness suggest that a pro se litigant should receive an explanation before his or her suit is thrown out of court."); *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022) ("[C]ourts should be mindful and should be especially hesitant to dismiss for procedural deficiencies where the failure is by a pro se litigant.").

Defendants also cite cases holding that the grievance process "may take several weeks" to argue that Plaintiff could not have gone through the grievance process. *Kelly v. Carter*, No. 21-CV-8992 (ALC), 2023 WL 5334018, at *3 (S.D.N.Y. Aug. 18, 2023) (explaining that "[e]ach of these steps can take between five and seven days, such that the entire grievance process may take several weeks to complete" and concluding that the plaintiff could not have exhausted administrative remedies because the complaint was filed one day after the events in question); *Young v. Carter*, No. 21-CV-8973 (MKV), 2023 WL 2430408, at *3 (S.D.N.Y. Mar. 9, 2023) (complaint filed seven days after the events underlying the complaint); *Terry v. N.Y.C./D.O.C./V.C.B.C. Warden Carter*, No. 21-CV-8995 (GHW), 2023 WL 199594, at *5 (S.D.N.Y. Jan. 17, 2023) (fifteen days).

Courts in this District regularly dismiss claims for temporal impossibility where "the period between the date of the alleged incident and the filing of the complaint was 21 or fewer days," *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *12 (S.D.N.Y. Sept. 26, 2019), and Plaintiff's Complaint was filed 20 business days after the March 1, 2024 incident and 13 business

days after the March 12, 2024 incident. (*See* ECF 1, Compl.). According to Defendants' description

of the grievance process, if Plaintiff immediately submitted his grievance and promptly appealed

every adverse decision, the process would take a maximum of 22 business days. [7] Plaintiff did not

have time to exhaust his administrative remedies before filing suit. Plaintiff was required to raise

the March 12 incident to the City's grievance process as long as the process was available. *See*

*Williams*, 829 F.3d at 123 (explaining that under the PLRA, "aside from the significant textual

qualifier that the remedies must indeed be available to the prisoner, there are no limits on an

inmate's obligation to exhaust").

   If Plaintiff wishes to say that it would have been futile for him to pursue the grievance

process in connection with the two March 2024 incidents, he needs to allege specific facts showing

that the grievance process was unavailable to him in connection with those incidents or was

incapable of providing him with relief. *See id.* at 123-24. Plaintiff may allege futility by explaining:

(1) why the grievance process is a "dead end – with officers unable or consistently unwilling to

provide any relief . . ."; (2) why the grievance process is so difficult to understand that as a

practical matter it cannot be used; or (3) how prison administrators prevent inmates from filing

grievances by making misstatements about the process or intimidating inmates. *Ross*, 578 U.S. at

643-44 (2016).

---

[7]    The grievance coordinator has seven business days from the date of filing to make a
decision. The grievant's appeal of the Grievance Coordinator's decision must be decided by the
facility's commanding officer within five business days. The grievant's appeal of the facility's
commanding officer's decision must be decided by the facility's division chief within five business
days. The grievant's appeal of the facility's division chief decision must be decided by the Central
Office Review Committee within five business days. If a grievant immediately appeals each
decision, these steps may take up to 22 business days. (*See* ECF 20, Defs.' Mem. at 15.)

If he wishes to pursue claims based on events in October 2024, he needs to include those claims in a new complaint.

Accordingly, I respectfully recommend that Your Honor GRANT the motion to dismiss claim based on the March 2024 events on non-exhaustion grounds. There is no need to grant a motion to dismiss claims based on the October 2024 events, because those events are not part of the AC.

## II.      The Adequacy of Plaintiff's Pleading

Because I recommend that Your Honor grant Plaintiff leave to replead if he can truthfully allege that exhausting his administrative remedies as to the March 2024 events would have been futile, I also address the adequacy of Plaintiff's pleading.

### A.      Deliberate Indifference to Medical Needs Claim

#### 1.   Legal Standards

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To plead a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must allege two elements: "first, that the deprivation of medical care was sufficiently serious, and second, that the defendant acted or failed to act with a sufficiently culpable state of mind." *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 463-64 (S.D.N.Y. 2023).

### a.  Sufficiently Serious Deprivation of Medical Care

"Because society does not expect that prisoners will have unqualified access to healthcare, a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). A sufficiently serious injury or harm is one where "a condition of urgency, one that may produce death, degeneration or extreme pain, exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); *see also Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

If a plaintiff makes the required threshold showing, the first element is divided into two inquiries: (1) "whether the detainee was actually deprived of adequate medical care"; and (2) "whether the inadequacy in medical care is sufficiently serious." *Dumel*, 656 F. Supp. 3d at 464. "Where . . . the claim is that medical treatment has been improperly delayed, the inquiry with respect to the [first] element focuses on the [consequences] of the delay rather than the underlying condition itself." *Johnson v. City of N.Y.*, No. 12-CV-8265 (LAK) (HPB), 2014 WL 5393181, at *5 (S.D.N.Y. Oct. 21, 2014), *report and recommendation adopted,* 2014 WL 6455162 (S.D.N.Y. Nov. 17, 2014), *aff'd,* 633 F. App'x 37 (2d Cir. 2016).

As to the seriousness of a deprivation, "[t]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). However, "mere disagreement over the proper treatment does not create a constitutional claim." *Greathouse v. Meddaugh*, 632 F. Supp. 3d 3, 18 (N.D.N.Y. 2022), *aff'd,* No. 22-2834, 2023 WL 5439456 (2d Cir. Aug. 24, 2023).

### b. *Defendants' State of Mind*

With respect to the second prong, to adequately plead that the defendants had the required state of mind, a plaintiff must allege that the defendants "acted intentionally to impose the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to him even though they knew, or should have known, that the condition posed an excessive risk to health or safety." *Singletary v. Russo*, 377 F. Supp. 3d 175, 187-88 (E.D.N.Y. 2024); *see also Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 632 (2d Cir. 2025) (highlighting that a section 1983 claim under the due process clause requires a showing of more than mere negligence). An allegation of negligence is insufficient to support a claim of a due process violation. *See Darnell*, 849 F.3d at 36 (requiring that "an official acted intentionally or recklessly, and not merely negligently"). "The charged official [must] act or fail to act while actually aware of substantial risk that serious inmate harm will result." *Spavone v. New York State Dep''t of Corr. Servs.*, 719 F.3 d 127, 138 (2d Cir. 2013).

### 2. Analysis

### a. *Sufficiently Serious Deprivation of Medical Care – March 1, 2024*

Defendants do not dispute that Plaintiff's medical condition – a heart attack – was serious, so that Plaintiff meets the threshold requirement of alleging a serious illness. (*See* ECF 20, Defs.' Mem. at 11.) Instead, Defendants persuasively argue that Plaintiff's medical care was delayed rather than denied on March 1, 2024. (*See id*.) Plaintiff alleges that when he told Davis and Garcia that Plaintiff felt ill, Davis stated, "get some rest and maybe you'll feel better" and Garcia told Plaintiff to "lay down and maybe [he]'ll feel better." (ECF 41 Pl's Opp. at 1-2.) While Davis and Garcia did not immediately arrange for Plaintiff to receive medical treatment on March 1, 2024,

15

Plaintiff acknowledges that Davis and Garcia called a medical emergency when Plaintiff told them that his symptoms had worsened, and he was then immediately brought to the medical unit and from there to Bellevue Hospital for treatment. (*See id*. at 2.) Because Plaintiff's medical treatment was delayed rather than denied on March 1, 2024, the relevant inquiry is whether there were any negative consequences of the delay. *See Johnson*, 2014 WL 5393181, at *5. Plaintiff has not alleged any consequences of the delay.

As to the seriousness of the deprivation of treatment, Plaintiff implies that he should have been taken to the medical unit immediately on informing Davis and Garcia that he felt ill, given his medical history and the medications he was taking. (*See* ECF 53, Pl.'s Letter). His view reflects "disagreement over the proper treatment," but such disagreement "does not create a constitutional claim." *Greathouse*, 632 F. Supp. 3d at 18. I cannot conclude that the initial response by Davis and Garcia to Plaintiff's complaint that he felt ill – to wait to see if Plaintiff started to feel better – falls afoul of "contemporary standards of decency," *Walker*, 717 F.3d at 125 – even though Plaintiff may have been at risk for a heart attack. After all, when Plaintiff said he felt worse, Davis and Garcia arranged for him to be taken to the medical unit and then to Bellevue Hospital. (*See* ECF 15, AC at 5-6.)

Plaintiff also asserts that he should not have been required to walk the length of a football field to get to the medical unit while he was having a heart attack. (*See* ECF 53, Pl.'s Letter at 2.) This statement, without more, does not adequately allege a sufficiently serious deprivation of medical care: Plaintiff would need to explain whether and how Defendants were aware he was having a heart attack and whether there was any other way to quickly get him to the medical area. *See Yancy v. Robertson*, 828 Fed. App'x 801, 804 (2d Cir. 2020) (concluding on a motion for summary judgment that the record did not support the plaintiff's claim that prison officers knew

he was having respiratory problems caused by an allergic reaction). In the absence of additional allegations about the situation, Plaintiff has not pleaded more than a disagreement about proper treatment, which cannot support a deliberate indifference claim. *See Greathouse*, 632 F. Supp. 3d at 18.

### b. Sufficiently Serious Deprivation of Medical Care – March 12, 2024

Plaintiff also alleges that because the transport officer misplaced his discharge papers, he did not receive adequate aftercare following his heart attack, which led him to develop a severe nosebleed; after he was made to walk to the medical area while his nose was bleeding, Plaintiff fell and injured his leg, which became infected. (*See* ECF 15, AC at 4-5.) It is unclear whether Plaintiff is complaining of the failure to receive adequate aftercare or of being made to walk to the medical area with a bad nosebleed. To the extent Plaintiff is complaining about the quality of his aftercare, he would need to provide more specific information about what care he received and what care he should have received but did not; without more, his claim appears to be that he disagrees with the level of care he received after his heart attack, which cannot support a deliberate indifference claim. *See Greathouse*, 632 F. Supp. 3d at 18.

To the extent that Plaintiff is complaining that, due to a shortage of medical personnel, Plaintiff had to walk to the medical area while he had a serious nosebleed rather than using another form of transport, I am unpersuaded that Defendants' treatment of Plaintiff offends "contemporary standards of decency," *Walker*, 717 F.3d at 125.

### c. Defendants' State of Mind – March 1, 2024

Nor does Plaintiff adequately allege that Defendants had the required state of mind to support a deliberate indifference claim. Plaintiff does not allege that Defendants "acted

intentionally to impose the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to him even though they knew, or should have known, that the condition posed an excessive risk to health or safety." *Singletary*, 377 F. Supp. 3d at 187-88. Instead, he alleges "negligence" in failing to send him to the medical unit when he first complained of feeling ill on March 1, 2024. (ECF 53, Pl.'s Letter at 1.)

   d. *Defendants' State of Mind – March 12, 2024*

Plaintiff's allegation that the transport officer lost his discharge papers also suggests negligence, as does his allegation that he should not have been made to walk to the medical unit while he was suffering from a heavy nosebleed. (*See* ECF 15, AC at 4-5.) However, an allegation of negligence is insufficient to support a claim of a due process violation, which requires intentional misconduct or recklessness. *See Darnell*, 849 F.3d at 36.

The most serious of Plaintiff's allegations is that he did not receive adequate aftercare because of the loss of his discharge papers. (*See id*. at 4.) While the loss of the papers themselves reflects negligence, the failure to provide Plaintiff with adequate aftercare could conceivably rise to the level of recklessness: it would depend on what aftercare was provided to Plaintiff and whether the medical staff at the prison knew that a heart attack patient would typically need additional treatment that Plaintiff was not receiving. *See Gomez v. Westchester Cnty.*, 19-CV-1335 (VB), 2020 WL 635577 at *13 (S.D.N.Y. Feb. 11, 2020) (noting that disagreements over what constitutes appropriate aftercare do not amount to failure to provide aftercare). But as pleaded, Plaintiff has not sufficiently alleged intentional conduct or recklessness in connection with the failure to provide him with adequate aftercare. *See id.*

                                        ***

Accordingly, I respectfully recommend that Your Honor GRANT Defendants' motion to dismiss Plaintiff's claims for deliberate indifference to his medical needs.

B.    <u>Claims Against Salmon and Raspanti</u>

1.  Legal Standards

To adequately plead a claim against an individual defendant in a suit brought under section 1983, a plaintiff must allege, among other elements, that the defendant was personally involved "in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A plaintiff may plead personal involvement by a defendant by alleging that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139.

For a prison official to be held liable for deliberate indifference to medical needs they "must know of and disregard an excessive risk to inmate health or safety and both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Sinnott v. Smith*, 743 F. Supp. 3d 504, 522 (W.D.N.Y. 2024). "[A] prison official must have some degree of personal involvement in an alleged constitutional deprivation to be personally liable," which means that a prison official "cannot be personally liable under § 1983 on the basis of respondeat superior or simply because he is atop the prison hierarchy." *Lewis v. Cunningham*, 483 F. App'x 617, 618-19 (2d Cir. 2012).

2.   Analysis

As Defendants point out, although Plaintiff names Deputy Warden Jerome Salmon and Nurse Administrator Colette Raspanti, the AC itself makes no mention of these individuals. (*See* ECF 20, Defs.' Mem. at 2; *see generally* ECF 15, AC.) In his opposition to the motion to dismiss, Plaintiff explains that he named Raspanti because he believes her to be "responsible for her team's actions." (ECF 41, Pl.'s Opp. at 3.) Plaintiff does not explain why he named Salmon. (*See generally id.*; ECF 57, Pl.'s Surreply.) Plaintiff has not adequately alleged the personal involvement of these individual Defendants.

Plaintiff makes no allegations against Salmon at all. It is well established that, "where the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 323 (E.D.N.Y. 2024); *see also Garcia v. Watts*, No. 08-CV-7778 (JSR), 2009 WL 2777085, at *13 (S.D.N.Y. Sept. 1, 2009) ("Where . . . a complainant names a defendant in the caption but the complaint contains no substantive allegation against the defendant, dismissal of the complaint is appropriate."); *Tavares v. City of New York*, No. 09-CV-3499 (JSR) (JCF), 2010 WL 3036558, at *4 (S.D.N.Y. Mar. 12, 2010) (same), *report and recommendation adopted*, 2010 WL 3063069 (S.D.N.Y. Aug. 4, 2010).

 Plaintiff alleges Raspanti was the nurse administrator on duty during the two incidents in March 2024 and that she was aware of his condition; Plaintiff concludes that she is liable to him under a supervisor liability (respondeat superior) theory. (*See* ECF 41, Pl.'s Opp. at 3-4.) However, "[a] plaintiff cannot base liability solely on the defendant's supervisory capacity. . . , [and] a

20

complaint that merely alleges a conclusion of personal involvement, with no supporting factual allegations, fails to satisfy the notice pleading standard of a civil rights complaint." *Bradley v. Rell*, 703 F. Supp. 2d 109, 124 (N.D.N.Y. 2010).

Accordingly, I respectfully recommend that Your Honor GRANT the motion to dismiss the claims against Salmon and Raspanti failure to state a claim.[8]

    C.    <u>Claims Against the City</u>

        1.  Legal Standard for a Claim Under Section 1983 Against the City

To plead a claim under section 1983 against the City, a plaintiff must allege that the deprivation of his constitutionally protected rights resulted from a "policy, custom, or practice" of the municipal defendants. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). A municipality such as the City "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* As the Second Circuit explained, to show a municipal policy or custom:

> the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a

---

[8]    Defendants similarly argue that Plaintiff has failed to adequately allege personal involvement by Defendants Garcia and Davis. (*See* ECF 20, Defs.' Mem. at 9-10.) However, Plaintiff does allege personal involvement by Garcia and Davis in connection with the March 1, 2024 incident, in that he alleges that he told both Garcia and Davis that he felt ill and that both individuals declined to immediately take him to the medical area and instead told him to wait to see if he felt better. (*See* ECF 41, Pl. Opp. at 1-2.) Whether Garcia's and Davis's alleged behavior rise to the level of deliberate indifference to medical needs is a separate question.

discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials.

*Patterson*, 375 F.3d at 226. A plaintiff may establish *Monell* liability of a municipality in any of four ways: "(1) a formal policy endorsed by the municipality, (2) actions directed by the government's authorized decision-makers or those who establish governmental policy, (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019). After first demonstrating "the existence of a municipal policy, a plaintiff must then establish a causal connection . . . between the policy and the deprivation of his constitutional rights." *Id.*

2.   Analysis

Plaintiff has not adequately pleaded *Monell* liability of the City. *See id*. Neither the AC nor Plaintiff's opposition papers mention any City policy requiring that an inmate be walked to the medical area rather than transported in another way or directing prison personnel to withhold necessary aftercare. (*See generally* ECF 15, AC; ECF 41 Pl.'s Opp.) Neither the AC nor Plaintiff's opposition papers mention actions by authorized government decisionmakers who establish City policy; the individual Defendants are a nurse administrator, a captain, and an officer (*see* ECF 15, AC at 1) and are not sufficiently senior to be policymakers. *See City of St. Louis v. Proprotnik*, 485 U.S. 112, 123 (1988) (defining policymakers as those with final policymaking authority). While a deputy warden may be a policymaker when he or she has issued a command level order that is binding within a facility, *see Williams v. City of N.Y.,* No. 23-CV-2700 (JPO), 2024 WL 3967307, at *12 (S.D.N.Y. Aug. 26, 2025), the AC contains no allegations that Defendant Deputy Warden Salmon issued any command level orders relevant to Plaintiff's medical treatment.

Neither the AC nor Plaintiff's opposition papers allege a widespread practice of requiring inmates to walk to the medical area rather than being transported in another way or of withholding necessary aftercare. Plaintiff discusses only his own experiences (*see generally* ECF 15, AC), which cuts against finding that he has adequately pleaded a persistent or widespread practice of indifference to medical needs of which policymakers must have been aware that could support a finding for municipal liability. *See Deferio*, 770 F. App'x at 590 (stating that a plaintiff must allege a causal link between a practice or policy and the injury incurred to support a *Monell* claim).

And neither the AC nor Plaintiff's opposition papers allege that the City failed to train municipal employees that inmates experiencing a medical emergency should not be made to walk to the medical area or that inmates should receive required aftercare. Rather, Plaintiff alleges he had to persuade Officer Carabello to allow Plaintiff to walk to the medical area on March 1, 2024 because no other method of transport was available (*see* ECF 41, Pl.'s Opp at 1-2), which suggests that prison personnel understood that inmates should not walk to the medical area while experiencing a medical emergency if there was another option. *See Gomez*, 2020 WL 635577, at *13.

Plaintiff further alleges that his Bellevue Hospital discharge papers were misplaced by the prison escort officer, leading to the lack of adequate aftercare that caused Plaintiff's severe nosebleed on March 12, 2024 (*see* ECF 15, AC at 5); but a transport officer's accidental loss of discharge papers does not support a claim that the City failed adequately to train employees on how to handle inmates' medical care. *See Norman v. Mount Vernon Hosp.,* No. 17-CV-9174 (KMK), 2020 WL 4432063, at *6 (dismissing *Monell* claims because the plaintiff made only boilerplate assertions about a failure to train but had not alleged any formal or informal training program had been in place).

Finally, Plaintiff alleges that he received inadequate aftercare because of the loss of his discharge papers. (*See* ECF 15, AC at 5.) But Plaintiff does not suggest that there was a policy of failing to provide aftercare, or that failure to provide aftercare was widespread, or that the City failed to train prison medical personnel about the importance of aftercare.

Accordingly, I respectfully recommend that Your Honor GRANT the motion to dismiss Plaintiff's *Monell* claim against the City.

### III.   Leave To Amend

"In this circuit, [i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Leneau v. Ponte*, No. 16-CV-0776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991)). "[A] pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)). Plaintiff has "not yet had the benefit of a decision of the Court explaining the pleading standards necessary for his claims to survive a motion to dismiss." *Al-Haj v. Akuamoah*, No. 19-CV-6072(LJL), 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021).

However, leave to amend may be denied as futile where there are "substantive" problems with the complaint that cannot be remedied with a "better pleading." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also O'Hara v. Weeks Marine, Inc*., 294 F.3d 55, 69 (2d Cir. 2002) ("[A] district court may deny leave to amend the complaint if the amendment would be futile.").

Plaintiff may be able to remedy the defects in the AC identified in this report and recommendation, or some of them.

If Plaintiff wishes to bring claims based on the two March 2024 incidents, he needs to file a new complaint with specific facts showing that the grievance process was unavailable to him in connection with those incidents or was incapable of providing him with relief. He could meet this requirement by including statements showing: (1) why the grievance process is a dead end because officers consistently failed to grant relief; (2) why the grievance process is so difficult to understand that as a practical matter it cannot be used; or (3) how prison administrators prevent inmates from filing grievances by making misstatements about the process or intimidating inmates. *See Ross*, 578 U.S. at 643-44 (2016). Plaintiff's subjective belief that the grievance process was unavailable to him without allegations as to why the grievance process was unavailable would be insufficient to support a claim of futility. "[F]utility is not established by an inmate's subjective belief that his administrative complaint might be denied." *Smith*, 2021 WL 2480412, at *6 (S.D.N.Y. June 17, 2021).

- If Plaintiff wishes to proceed with a deliberate indifference claim in connection with the March 1, 2024 incident, he needs to file a new complaint with facts explaining whether and how Defendants were aware he was having a heart attack, whether there was any way other than walking to quickly get him to the medical area, and whether and how his health was negatively impacted by the delay in bringing him to the medical area after he complained of feeling ill. *See id.* The new complaint would also need to explain why Garcia and Davis recklessly failed to act with "reasonable care" even "though they knew, or should have known, that the condition posed an excessive risk to health or safety." *Singletary*, 377 F. Supp. 3d at 187-88.

25

- If Plaintiff wishes to proceed with a deliberate indifference claim in connection with the March 12, 2024 incident, he needs to file a new complaint with facts explaining whether and how Defendants knew or were reckless in not knowing that he had not gotten proper aftercare, such as by saying what care he received and what care he should have received but did not. *See Sinnott*, 743 F. Supp. 3d at 522; *see also Yancy*, 828 Fed. App'x at 804. The new complaint would also need to explain whose responsibility it was to make sure he received proper care, and how those people recklessly failed to act with "reasonable care" even "though they knew, or should have known" that the absence of proper aftercare "posed an excessive risk to health or safety." *Singletary*, 377 F. Supp. 3d at 187-88.

- If Plaintiff wishes to proceed with claims against Defendants Salmon and Raspanti, he needs to file a new complaint explaining how those two individuals were personally involved in the events leading to Plaintiff's injury; Salmon and Responti may not be held liable solely based on their roles as supervisors.

- If Plaintiff wishes to proceed with a *Monell* claim against the City with regard to the March 1, 2024 incident, he needs to file a new complaint that identifies either a City policy or a widespread practice of requiring that an inmate be walked to the medical area while experiencing a medical emergency rather than transported in another way. If Plaintiff wishes to proceed with a *Monell* claim against the City with regard to the March 12, 2024 incident, he needs to file a new complaint that identifies either a City policy or a widespread practice of withholding necessary aftercare from prison inmates.

- If Plaintiff wishes to add claims based on the alleged failure to provide him with medication and a blood test in October 2024, he needs to file a new complaint that explains whether and how Defendants knew or were reckless in not knowing that he had not gotten needed medication and blood tests and explaining the harm to him as a result. *See Sinnott*, 743 F. Supp. 3d at 522; *see also Yancy*, 828 Fed. App'x at 804. The new complaint would also need to explain whose responsibility it was to make sure he received proper care when he was placed in the general population, and how those people recklessly failed to act with "reasonable care" even "though they knew, or should have known" that failing to provide his medication and to draw his blood "posed an excessive risk to health or safety." *Singletary*, 377 F. Supp. 3d 187-88.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Your Honor GRANT Defendants' motion to dismiss but give Plaintiff an opportunity to submit a second amended complaint if he can address the problems with his AC identified in this report and recommendation. If Your Honor agrees with this recommendation, Plaintiff should be reminded that a second amended complaint would replace and not supplement all prior complaints, so that he should include all allegations that he wants the Court to consider in his second amended complaint; Plaintiff should also be reminded that there is a Legal Assistance Clinic available to assist self-represented parties in civil cases. The Clinic may be able to provide a pro se party with advice in connection with their case. The Clinic is run by a private organization called the City Bar Justice Center.

If Plaintiff would like legal assistance, he should complete the City Bar Justice Center's intake form (available at https://www.nysd.uscourts.gov/attorney/legal-assistance) to make an

appointment. If Plaintiff has questions about the intake form or needs to highlight an urgent

deadline already disclosed in the form, the Clinic can be contacted by phone (212-382-4794) or

email (fedprosdny@nycbar.org). Appointments are available remotely Monday through Friday from

10:00 a.m. to 4:00 p.m.

DATED:  October 10, 2025
         New York, NY

RESPECTFULLY SUBMITTED,

ROBYN F. TARNOFSKY
United States Magistrate Judge


## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen (14) days (including weekends and holidays) from service of

this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and

Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three

additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may

respond to another party's objections within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk

of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension

of time for filing objections must be addressed to Judge Garnett.

FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), (d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).